# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Gold Apple iPhone<br>Seizure No. 2023250400101101-0006<br>("Target Device") | Case No. '23 MJ2472 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jee-Soo Kim, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **telephone** *(specify reliable electronic means)*.

Date: July 10, 2023

*Judge's signature*

City and state: San Diego, California       Hon. Daniel E. Butcher, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

> Gold Apple iPhone
> Seizure No. 2023250400101101-0006
> **("Target Device")**

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 25, 2023, up to and including June 30, 2023:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Jee-Soo Kim, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

>   Gold Apple iPhone
>   Seizure No. 2023250400101101-0006
>   ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Bryan VARGAS Borda for importing approximately 25.28 kilograms (55.73 pounds) of fentanyl from Mexico into the United States on April 25, 2023. An arrest warrant was issued on April 28, 2023, and VARGAS was arrested re-entering the United States on June 30, 2023.

2. The **Target Device** is currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154. This application for a search warrant seeks authorization to search and seize data and information from the **Target Device** as described in Attachment B for the period beginning March 25, 2023, one month before the importation event, and up to an including June 30, 2023, the date of VARGAS' arrest.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I have been employed as a Special Agent with Homeland Security

Investigations (HSI) since November of 2017. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

6. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, the Otay Mesa Port of Entry, and the Tecate Port Of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual(s) responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

//

//

## FACTS SUPPORTING PROBABLE CAUSE

8. On April 25, 2023, at approximately 8:21 PM, a white 2011 Mitsubishi Eclipse (Plate: B92-NXC-5; VIN: 4A37L5EFXBE003698; hereafter "the vehicle") entered the United States from Mexico at the San Ysidro Port of Entry through vehicle lane number 11. VARGAS was the driver and sole occupant. A Customs and Border Protection (CBP) Canine Enforcement Officer screened the vehicle with the officer's certified narcotics detection dog and received a positive alert of the vehicle. A CBP Officer obtained a negative declaration from VARGAS who stated he was going to San Ysidro, California to go shopping at Plaza Las Americas outlets and to eat at In-N-Out Burger. The vehicle and VARGAS were subsequently referred for secondary inspection.

9. During the secondary inspection, VARGAS was escorted to a security office out of view of the vehicle. During the vehicle inspection of the vehicle, a CBP officer observed packages concealed behind the quarter panels and within the seats of the vehicle. Based on training and experience, including having found packages similarly concealed in vehicles many times in the past which proved to contain drugs after field and lab testing, investigating officers and agents believed the packages in the vehicle contained prohibited drugs.

10. To facilitate further investigation, the packages were left in place and not opened or inspected. Investigators decided to try to follow the vehicle to its intended destination. Because of the exigencies of the situation and to avoid a longer delay which might cause the driver or any co-conspirators to suspect or detect that the packages had been discovered by law enforcement, investigators installed two GPS tracking devices on the vehicle at approximately 8:33 PM, so the vehicle and VARGAS could leave the Port of Entry and continue to their intended destination. One tracker was placed on the exterior passenger side of the vehicle while the other was placed under the spare tire of the vehicle. The second GPS tracking device had been installed for purposes of redundancy; in case a tracker stops reporting for various reasons. The trackers were installed without activation, which would occur remotely once a warrant was signed by a judge.

11. At approximately 8:47 PM, the vehicle was released north from vehicle secondary inspection onto the 805 North freeway. The vehicle then took the first US exit at San Ysidro Blvd and entered a shopping plaza located at in San Ysidro, CA where VARGAS parked for approximately 10 minutes. The vehicle then left the area and drove in a circuitous manner through East Chula Vista for about 30 minutes which included a non-sensical route that included many U-turns, driving down dead-end streets, making last second turns, as well as driving well below the speed limit. Based on their training and experience, investigators recognize that this style of driving is often conducted by suspects using surveillance detection routes, *i.e.* routes and driving patterns used to reveal if law enforcement is conducting mobile surveillance on a vehicle.

12. Ultimately, the vehicle arrived and parked at a restaurant on Outer Rd in San Diego at approximately 9:29 PM and VARGAS entered the restaurant. At approximately 9:50 PM, Magistrate Judge Gallo signed the tracker warrant, Case No. 23-mc-0777, at which time the tracker was activated to be monitored. At about 10:00 PM, VARGAS came back out of the restaurant and was picked up by another vehicle. VARGAS was then surveilled being driven down to the border where he exited and proceeded on foot to the pedestrian exit into Mexico.

13. After conducting surveillance of the parked vehicle for several hours, at approximately 4:00 AM, investigators moved in to seize the vehicle. The vehicle was towed back to the Port of Entry and a thorough inspection of the vehicle revealed a total of 28 concealed packages which field testing revealed to contain fentanyl. The total weight of the fentanyl was 25.28 kilograms. The vehicle and narcotics were seized by CBP.

14. Subsequently, VARGAS was charged in a single-count Complaint with importation of fentanyl, in violation of 21 U.S.C. § 952, 960, Case No. 23-mj-1522, and an arrest warrant was issued.

15. On June 30, 2023, VARGAS attempted to cross into the United States from Mexico at approximately 9:29 AM. Due to the arrest warrant, VARGAS was taken into custody.

16. The **Target Device** was found and seized by a CBP Officer who was tasked to perform a search of VARGAS. The **Target Device** was found by the CBP Officer on VARGAS' person.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that VARGAS was using the **Target Device** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event.

18. Moreover, based on my training and experience, drug traffickers, transporters, and co-conspirators may continue to communicate regarding the failed status of a drug smuggling event. Co-conspirators are also often unaware of a driver's arrest and will continue to attempt to communicate with the driver after their arrest to determine the whereabouts of the narcotics. They may also communicate with each other in the aftermath of a drug seizure by law enforcement officers to assign responsibility and determine whether the driver must reimburse the drug traffickers for the value of the lost drugs.

19. Based upon my training and experience, it is also not unusual for individuals, such as VARGAS, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on March 25, 2023, up to and including June 30, 2023.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is

subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21.   Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22.   Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

23. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

24. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of VARGAS' violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Jee-Soo Kim
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 10th day of July, 2023.

_____
Honorable Daniel E. Butcher
United States Magistrate Judge